UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEYSTONE RV COMPANY | ) |
| | ) |
| Plaintiff and | ) |
| Counter-Defendant | ) |
| | ) No. 3:08-cv-414 |
| v. | ) |
| | ) |
| TIRECO, INC., | ) |
| | ) |
| Defendant and | ) |
| Counter-Claimant. | ) |

**OPINION AND ORDER**

This is principally a breach of contract action and there are three matters presently before me: Plaintiff Keystone RV Company's Motion for Partial Summary Judgment (DE 30); Defendant Tireco Inc.'s Motion to Strike (DE 39); and Tireco's Motion for Summary Adjudication. (DE 36.) For the reasons stated below, the cross motions for summary judgment (or adjudication) are denied because the contract in question is ambiguous and extrinsic evidence is needed to interpret the document.

**BACKGROUND**

Keystone is a manufacturer and distributor of recreational vehicles. It sells its RVs through a network of dealers. Tireco is an importer, manufacturer and distributor of tires, and in the past has sold tires to Keystone for placement on Keystone's RVs. It's undisputed that between 2006 and 2007 Keystone purchased over 61,000 Milestar tires from Tireco and installed them on Keystone recreational vehicles purchased by dealers and consumers. But in November 2006 Keystone started receiving complaints about the quality of the Milestar tires, leading Keystone to decide to remove and replace the Milestar tires. (DE 31, at 2.) As part of this

process, Keystone negotiated a voluntary replacement program with Tireco, the terms of which were laid out in a written agreement. Keystone and Tireco negotiated the specific terms of the agreement between May and June 2007, passing several drafts back and forth.

In essence, the agreement allowed Keystone to offer to its customers and dealers a chance to return the Milestar tire to Keystone who would then forward the replaced tires to Tireco. Here's how it was supposed to work: If a customer wanted to have his tires replaced, he would bring his RV to a dealer who would then replace the tires and return the original tire to Keystone. Keystone would then forward the tires to Tireco. For RVs that were still on dealers' lots, they too could be replaced by the dealer and sent to Keystone for later delivery to Tireco. Tireco would reimburse Keystone $90.00 for reach tire properly returned.[1]  (DE 31, at 3.)

They signed the final version of the contract on June 29, 2007. Section 9 of the contract laid out the reimbursement expiration dates for replacements made from dealers and consumers:

> This Agreement and the obligations of both parties will expire in two steps: 1) for units on dealer lots that have not yet been sold to consumers, the Agreement will expire on October 31, 2007; 2) for units purchased by consumers, the Agreement will expire on December 31, 2007 with the following exceptions:
>
> 1.  Any remaining tires or skived DOT/tread code product returned to Keystone from dealer units as of October 31, 2007 and not yet returned to Tireco may be shipped to Tireco for reimbursement at a later date. Otherwise, Tireco will not reimburse for any tires replaced on dealer units after October 31, 2007.
> 2.  Any remaining tires or skived DOT/tread code product returned to Keystone from consumers as of December 31, 2007 and not yet returned to Tireco may be shipped to Tireco for reimbursement at a later date. Otherwise, Tireco

---

[1] "Skived DOT/tread code product" is a section of a tire that includes identifying information. The agreement refers to the replaced tires as "tires or skived DOT/tread code product" because it permitted the consumers and dealers to return either the tire or the skived DOT/tread code product as proof of replacement. For simplicity, I'll refer to "tires or skived DOT/tread code product" as "replaced tires."

> will not reimburse for any tires replaced on customer-owned units after December 31, 2007.

(DE 38-2, at 6-7.) The contract provided that Keystone would send notices to the dealers and consumers that purchased Milestar tires. (*Id*.) The notices stated explicitly that the tire replacement program ended on either October 31, 2007 or December 31, 2007 (depending upon whether it was a customer or a dealer returning the tires), but they didn't state when Keystone needed to receive the replaced tires. Tireco approved those notices, and Keystone sent them to dealers and consumers. (DE 31, at 5.)

Tireco alleges that it paid Keystone over $2 million in reimbursements, but is now refusing to pay for certain tire returns. (DE 38, at 4.) Tireco alleges that those tires were returned after the Section 9 expiration dates, Keystone disagrees, and Keystone filed its Complaint seeking declaratory relief and damages for breach of contract. (DE 1.)

Tireco responded to Keystone's Complaint by filing counterclaims for breach of contract, defamation, and declaratory relief enforcing the termination provision of the contract. (DE 11, at 9-11.) Keystone's motion for partial summary judgment seeks the judgment that Tireco is obligated to reimburse Keystone for Milestar tires returned for replacement from dealer units as of October 31, 2007, and for such tires returned from consumers as of December 31, 2007, regardless of whether the replaced tires were in Keystone's possession as of those dates. (DE 30, at 1.)

Tireco's motion for summary adjudication seeks a determination and declaration that Tireco has no obligations under the contract for any tires not returned to Keystone's possession by the program cut-off dates set forth in Section 9 of the agreement, and that any claims Keystone submitted for reimbursement after the expiration dates were in breach of the contract.

(DE 36.)

**DISCUSSION**

The standards and procedures for a motion for summary adjudication (as Tireco calls it) are the same as those for a motion for summary judgment. *Gutta v. Std. Select Trust Ins. Plans*, 530 F.3d 614, 618 (7th Cir. 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.

As this is a diversity action, there is an initial conflict of law question that I need to address. Keystone claims that Indiana contract principles apply, and Tireco claims that California law supplies the rules for decision. But because California and Indiana law related to determining whether a contract is ambiguous are the same, I need not resolve the dispute – at least not at this point in time. *IFC Credit Corp. v. Bulk Petroleum Corp.*, 403 F.3d 869, 873 n.2 (7th Cir. 2005) (avoiding the choice of law analysis because the legal standards were identical). Under both California and Indiana law, a contract is ambiguous only where a reasonable person could find its terms susceptible to more than one interpretation. *Cummins v. McIntosh*, 845

N.E.2d 1097, 1104 (Ind. Ct. App. 2006); *Powerine Oil Co., Inc. v. Superior Ct.*, 118 P.3d 589, 591-92 (Cal. 2005). And for the reasons I'll discuss in a moment, because the contract is ambiguous, summary judgment is inappropriate no matter which state supplies the rule of law. *See Coplay Cement Co., Inc. v. Willis & Paul Group*, 983 F.2d 1435, 1438-39 (7th Cir. 1993).

Keystone and Tireco both contend that Section 9 of the contract is unambiguous and that their reading is the correct one. But how could a contract be unambiguous when two parties reading the same words come up with equally plausible yet polar opposite interpretations of the contract language? On the one hand, Keystone claims that Section 9, creating the expiration dates for the replacement program, doesn't require actual physical possession of the tires by Keystone on the deadline dates, just that the tires needed to be returned to dealers by the deadlines and that they could be later shipped to Keystone and then Tireco. (DE 31, at 16.) By contrast, Tireco contends that replaced tires needed to be in Keystone's possession as of the expiration dates. (DE 38, at 15.)

Considering the language of section 9, along with all other terms of the contract, the two subparagraphs of section 9 are confusing and ambiguous in three specific ways relating to the expiration of the agreement. These ambiguities make it unclear whether Keystone had to be in possession of the replaced tires on the expiration dates or whether they had to be either in the hands of the dealers or in transit.

First, the use of the word "otherwise" in the second sentences of the subparagraphs of Section 9 is confusing. The first sentence of the subparagraph states that replaced tires returned to Keystone (by either customers or dealers), but not returned to Tireco as of the expiration dates, may be shipped to Tireco at a later date. (DE 32-11, at 7.) The second sentence states

5

"Otherwise, Tireco will not reimburse for any tires replaced . . . after" the expiration dates. (*Id.*) These two sentences are inconsistent when read together. The first sentence permits reimbursement for products *returned to Keystone* as of the expiration dates. But the second sentence states that if the expiration dates aren't met, no reimbursements will occur for *replacements* that occurred after those dates. This, of course, suggests that tires replaced prior to (or on) the expiration dates are covered by the program. Had the second sentence stated that no reimbursements would occur for *tires returned to Keystone* after those dates, the two sentences wouldn't be inconsistent. But as it stands, the "Otherwise" sentence can reasonably be construed to mean that all replacements that occurred up to the expiration dates – regardless of when they were returned to Keystone – are part of the replacement program. Thus, the "Otherwise" sentences create an ambiguity as to what exactly the expiration dates mean.

The second ambiguity arises because the phrase "returned to Keystone" has two reasonable interpretations. This phrase is used in the subparagraphs of Section 9, which state that the replaced tires must be "returned to Keystone" so that Keystone can seek reimbursement from Tireco. (DE 32-11, at 7.) Keystone asserts that the word "returned" in the phrase "returned to Keystone" is a transitive verb, as in the phrase "return the movie to the video store." In other words, the tires have been "returned to Keystone" once the consumer or dealer began the tire replacement process. Under this interpretation, if the process has begun, then Keystone's actual possession of the replaced tires isn't necessary for the replacement to qualify under the program. (DE 31, at 15-16.) Keystone submits that it would be impossible for Keystone to have to be in possession of the replaced tires at the expiration dates because replacements were occurring in different retail locations up to the expiration dates. For that reason, according to Keystone, it

6

wouldn't make sense for the agreement to require possession on the same date as replacement.

Tireco's response is that "returned to Keystone" should be interpreted as a description of the replaced tires, not a verb. This interpretation means that the replaced tires must have been returned to Keystone – i.e. actually in Keystone's possession – before the tires may qualify for reimbursement. (DE 38, at 15.) According to Tireco, Sections 1 and 2 of the agreement – laying out the step-by-step process Keystone had to take for reimbursement – require Keystone to return all replaced tires to Tireco before reimbursement could occur. Section 9 is an exception that permitted Keystone to seek reimbursement for replacements that were in Keystone's possession but not yet physically passed on to Tireco. (DE 38, at 14-15.) Tireco's argument is that Keystone is simply trying to eliminate a term of the contract, and get reimbursed for any tires replaced at any time.

Both interpretations of this phrase are reasonable. The contract alone contains no mention of whether Keystone needed actual possession of the replaced tires for reimbursement, and this favors Keystone's argument. Keystone also makes a persuasive point that the replacements were occurring in various places around the country right up to the expiration dates, making actual possession by Keystone of the replaced tires on those dates logistically impossible. But Tireco is right that the plain language of Section 9 states that the replaced tires must be "returned to Keystone," which can reasonably be interpreted as requiring possession. Thus, Section 9's "returned to Keystone" language is ambiguous as well.

Third, the notices, attached to and incorporated by reference into the final version of the contract, create confusion about the expiration dates. Section 2(c) of the contract states the following:

7

> Keystone has given Tireco a reasonable opportunity to review and revise the following proposed documents related to Keystone's voluntary tire replacement campaign: 1) the Customer Notification letter; 2) the Dealer Notification Letter; 3) the Dealer Advisory Notice; 4) the Mobile Tire Center Letter; and 5) the Tire Replacement Instructions for Mobile Tire and Retail Centers. (All documents attached hereto as exhibit "A" to the Agreement). Tireco does not disagree with the final form and content of these documents.

(DE 32-11, at 4.) The notices, directed to dealers and consumers, explicitly state that the "tire replacement campaign ends" either October 31, 2007, or December 31, 2007. (DE 32-11, at 10.) The notices don't state that the tires must actually reach Keystone by those dates.

A reasonable interpretation of the language in the notice is that Keystone's notice – as approved by Tireco – permits dealers and consumers to replace their tires on the very last date. Reading this interpretation along with the rest of the agreement, one could conclude that the parties didn't anticipate Keystone having to actually possess the replaced tires for them to be part of the replacement program. Tireco's position is that the notice doesn't create an ambiguity, and that the notice doesn't change the fact that Keystone needed possession for reimbursement. Tireco argues that Keystone drafted the notice poorly, that Tireco simply approved it, and that the language of the notice has no bearing on the meaning of Section 9.

I'm not persuaded by Tireco's argument because the agreement specifically incorporates the notices into the agreement, and because I have to interpret the agreement as a whole, the statements in the notices affect the agreement's meaning. Because the notice lists October 31, 2007 and December 31, 2007 as dates when the tire replacement campaign "ends," it's not clear whether those dates are the last date the products can be turned in to Keystone, or the dates when Keystone needs possession of the product after replacement occurred.

The lack of specificity in the notices, in conjunction with the already unclear language of

8

Section 9, leave me to conclude that the agreement is ambiguous. Extrinsic evidence will be necessary to determine the meaning of Section 9 because Keystone and Tireco disagree about how the negotiations were carried out and the meaning behind the possession language. *See BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 572 F.3d 353, 358-59 (7th Cir. 2009). Thus, there is a question of fact as to the parties' intent when they drafted Section 9 of the agreement, and summary judgment is inappropriate. *Coplay Cement*, 983 F.2d at 1438-39. Keystone submitted factual evidence in support of its motion, which is the subject of Tireco's Motion to Strike. But because the parties have not conducted discovery on the issues involved in the contract negotiations, they should have an opportunity to do so. Afterwards, they may re-file the motions for summary judgment in light of this ruling.

Keystone's Motion for Partial Summary Judgment is **DENIED** (DE 30), Tireco's Motion for Summary Adjudication is **DENIED** (DE 36), and Tireco's Motion to Strike is **DENIED as MOOT** (DE 39).

**SO ORDERED.**

ENTERED: August 4, 2010

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT